1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| **RICKY EDWARDS and KIMBERLY EDWARDS,**<br><br>                    **Plaintiffs,**<br><br>     **v.**<br><br>**UNITED FRESH START, and DOES 1-20,**<br><br>                    **Defendants.** | **CIV-F-04-6673 OWW SMS**<br><br>**ORDER RE: MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS RE: REMOVAL AND REMAND (Doc. 18)** |

15

16                  **I.    INTRODUCTION**

17        On July 22, 2003, Ricky and Kimberly Edwards ("Plaintiffs")

18   entered into a written contract with United Fresh Start ("UFS" or

19   "Defendant"), a foreclosure avoidance service.  Doc. 1 Ex. A.

20   Plaintiffs allege that Defendant UFS breached the agreement

21   sometime between August 1, 2003 and September 2, 2003, and

22   wrongfully caused a foreclosure sale of their home.  *Id*.  On

23   February 20, 2004, Ricky and Kimberly Edwards ("Plaintiffs")

24   filed a complaint against United Fresh Start ("UFS" or

25   "Defendant") in the Superior Court of California, County of

26   Merced, seeking $86,500 in damages for fraud and breach of

27   contract, as well as statutory trebling of damages and other

28   relief.  In their complaint, Plaintiffs sued UFS as a "business

                                    **1**

organization form unknown." Doc. 1 Ex. O.  On December 12, 2004, UFS removed this case to federal court on the basis of diversity of citizenship.  82 U.S.C. § 1332, Doc. 1.  Plaintiffs assert that removal was untimely and seek remand of this action to state court along with attorney's fees and Rule 11 sanctions.  Doc. 9. Before the court are the Magistrate Judge's Findings and Recommendations recommending that Plaintiff's motion for remand and recovery of attorney's fees re removal, but not Rule 11 fees, be granted.  Doc. 18.

## II.   **FACTS AND PROCEDURAL HISTORY**

Plaintiffs originally filed this case in Merced County Superior Court on February 20, 2004, alleging that Defendant breached a foreclosure avoidance contract.  Doc. 1 Ex. A.  The complaint alleges claims for breach of contract, fraud, negligence, breach of the covenant of good faith and fair dealing, and violations of the California Civil Code.

On April 28, 2004, Plaintiff's counsel mailed copies of the Summons and Complaint to UFS's internet address in Las Vegas, Nevada, via first class, prepaid mail with a return receipt requested.  See Cal. C.C.P. § 415.40.  HQ Global Workplaces ("HQ Global"), an office management service, operates UFS's Mail Processing Center at 7251 W. Lake Mead Blvd. Suite 300, Las Vegas, Nevada 89128.  Cafferky Decl., Doc. 1 Ex. B at 3.  Ms. Jodie Hoover, an HQ Global general manager, signed the return receipt for UFS.  Ms. Hoover asserts it is HQ Global's practice to call and forward all legal papers H.Q. Global receives, to customers of its mail service facilities.  As of June 23, 2004,

**2**

1  more than forty days after the mailing, UFS did not return the
2  acknowledgment of service or file an appearance.  Mattos Decl.,
3  Doc. 11 Ex. A. at 1-2.

4      Plaintiffs submitted a proof of service, executed on June
5  21, 2004, in Las Vegas, Nevada, by a non-California registered
6  process server, John Wilks, who declared he left with an unnamed
7  receptionist, JANE DOE, over the age of 18: a summons and
8  complaint and a notice of case management conference in this
9  case, at 7251 W. Lake Mead Blvd. #300, Las Vegas, NV 89128 on May
10 3, 2004 at 3:19 p.m.  Doc. 1 Ex. C.  On May 3, 2004, the process
11 server also mailed copies of the summons and complaint by first-
12 class postage prepaid mail to the Las Vegas address where the
13 copies were left under C.C.P. §§ 415.20 and  415.95, as evidenced
14 by checked boxes, 5.b.(a) and (4) and 6a. and c., following state
15 substituted service procedures.

16     On June 11, 2004, Plaintiffs filed a Request for the Entry
17 of Default.  Doc. 1 Ex. D.  The state court clerk entered default
18 against UFS on June 15, 2004.  Mattos Decl., Doc. 11 Ex. C.

19     On September 9, 2004, claiming it had not been properly
20 served and had only fortuitously learned of the claimed service
21 in early September through its local (Washington) attorney's
22 review of the state court file, UFS made a special appearance
23 seeking to set aside the default and moved to quash service of
24 process as defective under state law.  On September 10, 2004, UFS
25 filed its Motion to Set Aside Default and for leave to file an
26 attached proposed notice of motion and motion to quash service of
27 summons.  Doc. 1 Ex. E. at 2.  UFS asserted that service was
28 invalid because (1) the H.Q. Global receptionist lacked authority

**3**

1   to be served and (2) UFS lacked sufficient contacts with
2   California to be subject to personal jurisdiction.  In the
3   alternative, UFS sought to be relieved from mistake or excusable
4   neglect, based on its managing trustee's lack of knowledge that
5   service could be effected by certified mail.

6       UFS originally received a Notice of Acknowledgment of
7   Receipt and the summons and complaint by mail at its Seattle,
8   Washington, Processing Center.  The Managing Trustee decided not
9   to return the acknowledgment.

10      Mr. Cafferky then notified a Belize City, Belize attorney
11  for the former owner of UFS, that UFS "might be sued in
12  California by the Plaintiffs."  The Belize attorney wrote to
13  Plaintiffs' counsel on April 20, 2004, and requested direct
14  correspondence from Plaintiffs.  Mr. Cafferky received copies of
15  Plaintiffs "Request for Entry of Default Court Judgment" at the
16  end of June, but did nothing until September 1, 2004, when he
17  first met with local counsel, Mr. Clabaugh.

18      On October 1, 2004, the state judge ruled in open court that
19  UFS was properly served, denied the motion to quash, and granted
20  UFS's motion to set aside the default, ordering UFS to file its
21  appearance within 15 days following October 1, 2005.  A written
22  order was signed October 7, 2004, and served by mail October 18,
23  2004.  UFS on October 15, 2004, attempted unsuccessfully to file,
24  by fax, a notice of motion and motion to reconsider the denial of
25  its motion to quash service.  Doc. 1 Ex. I.

26      On October 18, 2004, Plaintiffs served Defendant's counsel
27  by mail with a case management statement.  Doc. 1, Ex. O.  On
28  October 19, 2004, Plaintiffs again filed a Request for Entry of

**4**

Default in the state court.  Default was entered for Plaintiffs
on October 20, 2004, the same day Plaintiffs' counsel asserts
that UFS counsel made a "general appearance" for UFS by
unreservedly participating in an October 20, 2004, telephonic
case management conference.  There is no record provided of this
appearance.  The Magistrate Judge's Findings and Recommendations
found that the case management conference was continued to
January, 2005, for UFS' failure to file a diligence statement.
The state court's findings and order on the default motion, filed
October 22, 2004, found that UFS did not file a response within
the time allowed, on or before October 16, 2005.  The case
management conference was continued to January 2005.

On October 29, 2004, UFS filed its motion to set aside the
second default on the grounds of mistake, inadvertence, surprise,
and excusable neglect and sought reconsideration of the efficacy
of the original service of the summons and complaint on UFS.
Doc. 1 Ex. K.  On December 3, 2004, the state court denied
Defendant's motion for reconsideration of the motion to quash and
again granted Defendant's motion to set aside default.  The judge
ordered UFS to "file their answer within 10 days of December 1,
2004."  Doc. 1 Ex. N.  Substantial dispute arose between UFS'
local counsel, Mr. Clabaugh, and Plaintiff's counsel, whether
Plaintiff's counsel had unfairly rushed to the second default in
violation of the spirit of their prior interactions concerning
the efficacy of service.

On December 8, 2004, UFS removed this action and filed an
answer in federal court.  Plaintiffs timely filed a motion to
remand the case to state court on the ground that removal was

**5**

1    untimely.  Doc. 11, filed Dec. 27, 2004.  On January 31, 2005,
2    the Magistrate Judge filed Findings and Recommendations,
3    recommending that Plaintiff's motion to remand the case to state
4    court be granted and for recovery of Plaintiffs' attorney's fees
5    for improvident removal.  UFS timely filed objections to the
6    F&Rs.

7

8                    **III.**    **STANDARD OF REVIEW**

9         A district court reviews *de novo* a magistrate judge's
10   conclusions of law, *see Barilla v. Ervin*, 886 F.2d 1514, 1518
11   (9th Cir. 1989) (citing *Britt v. Simi Valley Unified School*
12   *Dist.*, 708 F.2d 452, 454 (9th Cir. 1983)), and those portions of
13   the proposed findings of fact to which objection has been made,
14   *see* 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v.*
15   *Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.
16   1981).  The court may, however, assume the correctness of that
17   portion of the proposed findings of fact to which no objection
18   has been made and decide the motion based on applicable law.  *See*
19   *United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989)
20   (citing *Orand v. United States*, 602 F.2d 207, 208 (9th Cir.
21   1979)).  The district court may accept, reject, or modify, in
22   whole or in part, the magistrate judge's findings or
23   recommendations.  *See* 28 U.S.C. § 636(b)(1)(c).

24        Statutes regarding removal are strictly construed.  Federal
25   jurisdiction must be rejected if there is any doubt as to the
26   right of removal in the first instance.  *Gaus v. Miles, Inc.*, 980
27   F.2d 564, 566-567 (9th Cir. 1992).  "The strong presumption
28   against removal jurisdiction means that the defendant always has

                                  **6**

the burden of establishing that removal is proper." *Id*.

## IV.   **ANALYSIS**

### A.   **Service of Process**

On October 1, 2004, Superior Court Judge Ronald Hansen entered an order in open court, followed by a written finding that Plaintiffs had properly served UFS.[1]  The order stated:

> "IT IS HEREBY ORDERED, ADJUDGED AND DECREED the Court has jurisdiction over defendant UNITED FRESHSTART, <u>UNITED FRESHSTART has been properly served with process</u>, however, the Court grants defendant UNITED FRESHSTART'S motion to set aside default and orders they file their appearance within 15 days of October 1, 2004."

Ex. D. (Emphasis added).  No basis exists to know which ground of service was found valid or how the credibility disputes over substituted service under C.C.P. §§ 415.20 and 415.95 were resolved.  On December 3, 2004, Judge Hansen denied Defendant's motion for reconsideration of the October 1, 2004 order, affirming without any findings that UFS had been properly served and again setting aside UFS's default.  Five days later, UFS removed this action to federal court on December 8, 2004.

### 1.   **Jurisdiction to Re-examine State Court Rulings.**

Federal courts may redetermine, *de novo*, the propriety of state court orders concerning the sufficiency of service of process upon removal.  *See* 14C Fed. Prac. & Proc. Juris. 3d §

---

[1] No transcript of the oral order is provided.

**7**

3738 ("Any orders or rulings issued by the state court prior to removal are not conclusive in the federal action."); *cf., Gen. Inv. Co v. Lake Shore & M.S. Ry. Co.*, 260 U.S. 261, 267 (1922) (state court's order on objection to service decided before removal could be reconsidered by the federal district court after removal - the ruling was to be treated with respect, but not as final or conclusive).  Once the federal court sets the state court ruling aside, it reviews the state court issue *de novo*. *Fidelity Sav. Ass'n of Kansas v. Ricker*, 141 F.R.D. 324, 325 (D.Kan. 1992).

After removal, federal procedural law governs.  Fed. R. Civ. P. 81(c); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 437 (1974).  However, generally, state procedural rules govern lawsuits until they are removed to federal court.  *Prozak v. Local 1 Int'l Union of Bricklayers & Allied Crafts*, 233 F.3d 1149, 1152 (9th Cir. 2000).

### 2.   Compliance with State Service Requirements

Sufficiency of process prior to removal is strictly a state law issue.  *Lee v. City of Beaumont*, 12 F.3d 933, 936-937 (9th Cir. 1993) and governed by the law of the state under which service was made.  *Byrd v. St. Helena Parish Police Jury*, 207 F.Supp.2d 516, 517 (M.D. La. 2001); (compliance with the statutory procedures for service of process is essential to gain personal jurisdiction); *Ellard v. Conway*, (2001) 94 Cal. App. 4th 540, 544.  California Code of Civil Procedure § 415.40 allows service of a person outside the state by certified mail, by "sending a copy of the summons and of the complaint to the person

**8**

1   to be served by first-class mail, postage prepaid, requiring a

2   return receipt."  If serving a corporate defendant, plaintiffs

3   must also comply with C.C.P. Section 416.10(b).  *Dill v. Berquist*

4   *Construction Comp., Inc.*, 24 Cal. App. 4th 1426, 1435 (1994).

5   Section 416.10(b) provides, "A summons may be served on a

6   corporation by delivering a copy of the summons and of the

7   complaint: . . . (b) to the president or other head of the

8   corporation, a vice president, a secretary or assistant

9   secretary, a treasurer or assistant treasurer, a general manager,

10  or a person authorized by the corporation to receive service of

11  process."  Section 415.95 was invoked here, because UFS is sued

12  as a business organization form unknown, not a corporation.

13      Section 415.40 governing service on a person outside the

14  state, and 415.95 require the following: Section 415.40 calls for

15  summons to be mailed to the "person to be served, by first-class

16  mail or airmail, postage prepaid, addressed to the person to be

17  served, together with two copies of the notice and acknowledgment

18  provided for in subdivision (b) and a return envelope, postage

19  prepaid addressed to the sender."

20      Plaintiffs' return receipt, however, shows that they mailed

21  the summons directly to UFS.  Doc. 20, Ex. A.  There are no UFS

22  employees, officers, or general manager at H.Q. Global's Las

23  Vegas mail center.  Arguably, H.Q. Global was an agent for UFS,

24  at UFS' mail processing center in Las Vegas, Nevada.  There is

25  undisputed evidence that H.Q. Global was not authorized by UFS to

26  receive service of process at Las Vegas on behalf of UFS.

27      Section 415.95(a) provides, "A summons may be served on a

28  business organization, form unknown, by leaving a copy of the

**9**

summons and complaint during usual office hours with a person who
is apparently in charge of the office of that business
organization, and by thereafter mailing a copy of the summons and
complaint by first-class mail, postage pre-paid, to the person to
be served at the place where a copy of the summons and complaint
was left.  Service of a summons in this manner is deemed complete
on the 10th day after the mailing."

### 3.   Substantial Compliance

Strict compliance with a service statute is not always
required.  "The statutory provisions regarding service of process
should be liberally construed to effectuate service and uphold
the jurisdiction of the court if actual notice has been received
by the defendant." *Pasadena Medi-Center Assoc.v. Superior Court*,
9 Cal. 3d 773, 778 (1973).  Under *Dill*, Plaintiffs can show that
they substantially complied with the statute if "the summons was
actually received by one of the persons to be served." *Dill*, 24
Cal. App. 4th at 1437.  Nothing in the record shows that any of
the "persons to be served" under Section 416.10 actually received
the summons at UFS.  Plaintiffs assert that they properly served
UFS by mailing a copy of the summons and complaint to the Las
Vegas Mail Processing Center, that had a procedure to forward all
legal mail to its customers.  Even though an HQ general manager,
Jodie Hoover, signed a return receipt for the summons and
complaint, nothing in the record affirmatively indicates that Ms.
Hoover delivered the summons and complaint to any UFS individuals
authorized to accept service.  Ms. Hoover's declaration shows
that it is H.Q. Global's regular practice to call and forward all

**10**

1  legal papers to its customers on receipt.  The court in *Dill*

2  explained, "the fact that a person is authorized to receive mail

3  on behalf of a corporation and to sign receipts acknowledging the

4  delivery of that mail does not mean that the same person is

5  authorized by the corporation to accept service of process."  *Id.*

6  at 1438.  Plaintiff does not suggest that Ms. Hoover is

7  authorized to accept service for UFS and Ms. Hoover declares to

8  the contrary.  There is no basis to find that service was validly

9  effected under C.C.P. § 415.10.

10

11         **4.    Substituted Service**

12         Plaintiffs also contend they properly served UFS by

13  substituted service, pursuant to Cal. Code Civ. Proc. § 415.95.[2]

14  Statutes governing substitute shall be "liberally construed to

15  effectuate service and uphold jurisdiction if actual notice has

16  been received by the defendant . . . . [citation]" *Bein v.*

17  *Brechtel-Jochion Group, Inc.*, (1992) 6 Cal. App. 4th 1387, 1392.

18  Section 415.95 provides,

19                 (a) A summons may be served on a business
                   organization, form unknown, by leaving a copy
20                 of the summons and complaint during usual
                   office hours with the person who is
21                 apparently in charge of the office of that
                   business organization, and by thereafter
22                 mailing a copy of the summons and complaint
                   by first-class mail, postage prepaid, to the
23                 person to be served at the place where a copy
                   of the summons and complaint was left.
24                 Service of a summons in this manner is deemed
                   complete on the 10th day after the mailing.

25

26  ───────────────

       [2]The California Legislature added Cal. Code Civ. Proc. §
27  415.95 in 2003.  Section 415.95 became effective January 1, 2004.
    Because service was attempted on April 28, 2004 and June 21,
28  2004, Section 415.95 was operative.

1  Cal. Code Civ. Proc. § 415.95.  Plaintiffs sued UFS as a business

2  organization, form unknown, apparently owned by Tristar Group, a

3  Trust.

4      Here, substituted service may not be made under section

5  415.20(a) which provides:

6          "(a) In lieu of personal delivery of a copy
           of the summons and complaint to the person to
7          be served as specified in Section 416.10,
           416.20, 416.30, 416.40, or 416.50, a summons
8          may be served by leaving a copy of the
           summons and complaint during office hours in
9          his or her office or, if no physical address
           is known, at his or her usual mailing
10         address, other than a United States Postal
           Service post office box, with the person who
11         is apparently in charge thereof, and by
           thereafter mailing a copy of the summons and
12         complaint by first-class mail, postage
           prepaid to the person to be served at the
13         place where a copy of the summons and
           complaint were left.  When service is
14         effected by leaving a copy of the summons and
           complaint at a mailing address, it shall be
15         left with a person at least 18 years of age,
           who shall be informed of the contents
16         thereof.  Service of a summons in this manner
           is deemed complete on the 10th day after the
17         mailing."

18 UFS is not a person specified in any of the sections referred to

19 in 415.20(a).

20      The legislative history of Sections 415.20 and 415.95

21 reveals the legislature's motivations for passing these laws.

22 "Many businesses exist who have never completed the formalities

23 to operate as a corporation, partnership, [limited liability

24 company, etc., and have never filed a fictitious business

25 statement to identify their true owners.  These same businesses

26 may refuse to identify the owners of the business so that service

27 [may] be effected on an individual.  In these cases it is

28 impossible as a practical matter to achieve service."  A.B. 418

1  Sen., July 8, 2003.  Therefore, service is to be accomplished by

2  "expanding the substituted service process already allowed for a

3  business with a known office location to a <u>business whose only</u>

4  <u>known address is a mailing address at a commercial mail</u>

5  <u>facility</u>."  *Id*. (emphasis added) (internal quotes omitted).  "A

6  'person' means a natural person, partnership, joint venture,

7  corporation, limited liability company, or other entity."  *Id*.

8      Here, the Proof of Service attests that Mr. Wilks, the

9  process server, left the Summons and Complaint with an unnamed

10  receptionist, JANE DOE, over age 18, on May 3, 2004 at UFS's Las

11  Vegas mail processing center, a commercial mail facility.  Mr.

12  Wilks declares he informed the receptionist of the general nature

13  of the papers, and then mailed copies of the same documents to

14  H.Q. Global's Las Vegas address. Plaintiffs substantially

15  complied with the requirements for service set forth in Section

16  415.20, despite Defendant's challenge to the mail service

17  receptionist's legal authority to accept service of a summons and

18  complaint for UFS.

19      As to compliance with § 415.95, the proof of service shows

20  that the summons and complaint was served by leaving a copy of

21  the summons and complaint during usual office hours (3:19 p.m.)

22  with the person who is apparently in charge of the office (the

23  receptionist) of that business organization (H.Q. Global was not

24  the business organization to be served).  A copy of the summons

25  and complaint was thereafter mailed by first-class, postage pre-

26  paid, to UFS at the H.Q. Global Las Vegas address where a copy of

27  the summons and complaint was left.  Neither party has addressed

28  whether technical compliance is achieved by serving an Internet

**13**

mail service office, which acts for the business organization to be served, but is not "the office of that business organization."

The third theory of "general appearance" based on the allegedly "unreserved appearance by Mr. Clabaugh at an October 20 case management telephonic conference," in view of UFS' ongoing attempts to object to service, default, and jurisdiction in California, does not satisfy the service of summons requirement. According to the Magistrate Judge's analysis, under C.C.P. § 415.40, service was effectuated ten days later on or about May 8, 2002.  F&R 11:1-2.  The Magistrate Judge analyzed substituted service on May 3 under C.C.P. § 415.20, however, that section applies to corporations (416.10), corporations dissolved or charter forfeited (416.20); joint stock company or association (416.30); unincorporated association (416.40); or public entity (416.50) none of which are applicable to the substituted service here sought to be effected which was accomplished under § 415.95. A question remains whether § 415.95 was valid as the H.Q. Global offices were not an office of UFS, however the issue need not be decided in view of substantial compliance with C.C.P. § 415.40.

Although the state court's decision is a conclusion of law and provides no analysis, UFS gained actual notice of the lawsuit through its managing trustee, Mr. Cafferky, for its owner from a March 4, 2004, letter from Plaintiff's counsel.  Mr. Cafferky sent a letter to the attorney for UFS's former owner, in Belize City, Belize, confirming notice of the lawsuit, which he characterized as an "intention to file," misadvising the law firm that UFS "might be sued."  Mr. Cafferky then had actual knowledge that UFS had in fact been sued by Plaintiffs and that efforts at

**14**

1  service of the Summons and Complaint had been made through H.Q.
2  Global.   The Magistrate Judge's determination that service of
3  process by out-of-state certified mail under C.C.P. § 415.40 is
4  not erroneous.

5

6  **B.    Timeliness of Removal**

7      Federal law determines the limits of removal jurisdiction.
8  "The Act of Congress must be construed as setting up its own
9  criteria, irrespective of local law, for determining in what
10 instances suits are to be removed from the state to the federal
11 courts." *Shamrock Oil & Gas Corp.*, 313 U.S. 100, 104 (1941).
12 However, although Fed. R. Civ. P. 81(c) provides the time within
13 which a defendant must answer a removed action, the federal rules
14 apply after removal and "neither add to nor abrogate what has
15 been done in the state court prior to removal." *Butner v.*
16 *Neustadter*, 324 F.2d 783, 785-86 (9th Cir. 1963) (the federal
17 court takes everything that occurred in state court as it finds
18 it and as if it had taken place in federal court); *see Matter v.*
19 *Meyerland*, 910 F.2d 1257, 1262-63 (5th Cir. 1990) (a state court
20 ruling on a demurrer could be reconsidered by the federal court
21 to which it was removed as this was consistent with state law
22 under which the decision had been made and with federal
23 procedure).

24     When a plaintiff files a complaint in state court, a
25 defendant has 30 days to file for removal to federal court under
26 28 U.S.C. § 1446, which provides:

27          The notice of removal of a civil action or
            proceeding shall be filed within thirty days
28          after the receipt of the defendant, through

**15**

service or otherwise, of a copy of the
initial pleading setting forth the claim for
relief upon which such action or proceeding
is based, or within thirty days after the
service of summons upon the defendant if such
initial pleading has been filed in court and
is not required to be served on the
defendant, whichever period is shorter.

28 U.S.C. § 1446(b).  A sole defendant who fails to remove within

thirty days of service of process has waived the right of

removal.  *Cantrell v. Great Republic Ins. Co.*, 873 F.2d 1249,

1256 (9th Cir. 1989); *cited in Smith . Mail Boxes, Etc.*, 191

F.Supp.2d 1155, 1158 (E.D. Cal. 2002).

The Supreme Court has interpreted Section 1446(b) to

identify the event that starts the time period running from

"within thirty days after receipt or otherwise . . .," is the

service of a defendant with process (a summons).  *Murphy*

*Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344,

347-48, 355-56 (1999).  The Supreme Court reasoned that the

requirement of formal service of a summons "assures defendants

adequate time to decide whether to remove an action to federal

court."  *Id*.  In *Murphy Brothers*, the defendant's receipt of a

faxed, time-stamped copy of the complaint without service of the

summons did not start the 30 day removal period.  In this case,

Plaintiffs satisfied *Murphy*'s formal service requirement by

properly serving UFS by out-of-state certified mail with the

summons and complaint pursuant to Cal. Code Civ. Proc. §§ 415.40.

**1.   Time to file for removal while an objection to service**
**is pending in state court.**

Although the 30 day removal period begins to run when a

1  defendant waives objections to service, *See Lee v. Pineapple*

2  *Management Services, Inc.*, 241 F.Supp.2d 690 (S.D. Miss. 2002),

3  no statutory rule determines when the removal period begins if a

4  defendant is properly served, but continues to dispute the

5  validity of that service in state court.   No Ninth Circuit

6  decision speaks to this precise issue, but some district courts

7  have interpreted *Murphy Brothers* to mean that the thirty-day

8  clock does not begin to run while defendants' motions to quash

9  service are pending before a court.   *Phoenix Container, L.P. v.*

10  *Sokoloff et al.*, 83 F. Supp. 2d 928, 931 (N.D. Illinois, 2000);

11  but see *Brooklyn Hosp. Center v. Diversified Information...*, 133

12  F.Supp.2d 197, 201, 203 (E.D.N.Y. 2001) (noting that when a

13  summons and complaint are served together, the defendant has

14  thirty days to remove, and finding the state of New York "summons

15  with notice" equivalent to an initial pleading that contains

16  sufficient information to ascertain the basis for removal); *cf.*

17  *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 206 (2d

18  Cir. 2001) (running the 30 days removal time from actual receipt

19  of the complaint because removability could not be ascertained

20  from the New York summons with notice).

21      UFS argues that *Phoenix Container* should govern this case

22  and that the 30 day removal period did not begin to run until

23  December 3, 2004, when the state judge made a "final ruling" on

24  Defendant's motion for reconsideration.   However, the *Phoenix*

25  court's statement is dicta for two reasons: (1) in that case, the

26  plaintiff initially failed to serve defendants properly as

27  required under *Murphy* and (2) the defendants waived their

28  objection to service by withdrawing their motion to quash which

**17**

1  started the 30 day removal time period and that 30 days expired
2  before the objection to service was filed.  Here, Plaintiffs
3  properly served Defendant UFS, on May 8, 2004.  UFS did not
4  challenge service until its September 10, 2004, motion to quash.
5  There appears to be no case law expressly holding that the 30 day
6  removal clock cannot run until a state court makes a "final"
7  decision on a defendant's motion to quash service, particularly
8  since the state court's order on a motion challenging sufficiency
9  of service of process is viewed as interlocutory.  14 C. Fed.
10 Prac. & Proc. Juris. 3d § 3738.

11      The "strong presumption against removal jurisdiction means
12 that the defendant always has the burden of establishing that
13 removal is proper."  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-567
14 (9th Cir. 1992).  Although there appears to be a lack of Ninth
15 Circuit authority on the collateral issue of the effect of a
16 "pending motion to quash service" during a "removal-eligible time
17 period, Defendants have not overcome the strong presumption
18 against removal.  Even if *Phoenix Container* governed this case,
19 Defendant could have filed its Notice of Removal commencing April
20 28, 2004, when it received notice of the summons and complaint
21 and could have asked the federal court to determine the efficacy
22 of service of the summons and complaint.  Instead, UFS waited
23 until December 3, 2004, after the second denial of a second
24 motion for reconsideration of the state judge's denial, in open
25 court on October 1, 2001, of UFS's initial motion to quash
26 service.  UFS was granted until October 16, 2004, to file an
27 appearance.  Proof of service of the October 1 order by mailing
28 was made on October 18, 2004.  Instead, Defendants were defaulted

**18**

1  again and filed a second motion to set aside default and to

2  reconsider the denial of the motion to quash on October 16, 2004,

3  which was not then accepted for filing due to a fax failure.

4      In other contexts, California state and federal courts have

5  held that a motion to reconsider does not toll a required time

6  period to effect a filing.  *Cf. Martinez-Serrano v. Immigration*

7  *and Naturalization Service*, 94 F.3d 1256 (9th Cir. 1996) (in the

8  context of immigration, an alien's filing of a motion to

9  reconsider did not toll the statutory time to appeal an

10  underlying deportation order); *Nish Noroian Farms v. Agricultural*

11  *Labor Relations Board*, 35 Cal.3d 726, 743 (1984) (a motion to

12  reconsider an ALRB final order did not toll the 30-day statutory

13  period within which an aggrieved party must petition for review).

14  *Arguendo*, by a parity of reasoning, the clock started running

15  from the time the original order denying the motion to quash was

16  announced on October 1, 2004, in open court and notice of that

17  order served by mail October 18, 2004.

18      Alternatively, under certified mail service or substituted

19  service, UFS had actual notice of and its managing director had

20  the summons and complaint in hand not later than June of 2004.

21  Based on substantial compliance and notice of service and the

22  lawsuit, UFS had thirty days to remove and could have litigated

23  service in the federal court.

24      Defendants' removal was untimely under the "pending

25  objection to service" theory and C.C.P. § 415.40.  The Magistrate

26  Judge's Findings and Recommendations to grant Plaintiffs' motion

27  to remand this action to state court is **ADOPTED**.

**19**

**C.  Objection to Jurisdiction.**

     Plaintiffs have suggested personal jurisdiction is lacking
by virtue of lack of minimum contacts with California.  An
objection to personal jurisdiction must be raised by a Rule
12(b)(1) motion.  Defendant's failure to do so waives the
objection, as does UFS's failure to submit evidence to support
the objection.  *Schnabel v. Lui*, 302 F.3d 1023, 1033-34 (9th Cir.
2002) (any defense of lack of personal jurisdiction waived by
failure to raise the defense in initial Rule 12(b) motion).


**D.   Attorney's Fees**

     "An order remanding a case may require payment of just costs
and any actual expenses, including attorney fees, incurred as a
result of the removal."  28 U.S.C. § 1447(c).  The Court has
discretion to award fees without a finding of bad faith.  *See
Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 446 (9th
Cir. 1992).  Such an award will be reversed only "if it was based
on a clearly erroneous determination of law – that is, if the
district court wrongly determined that the case should be
remanded to state court."  *Balcorta v. Twentieth Century-Fox Film
Corp.*, 208 F.3d 1102, 1105 (9th Cir. 2000).

     "A defendant may not, after having argued and lost an issue
in state court, remove the action for what is in effect an appeal
of the adverse decision."  *Moore*, 981 F.2d at 448.  Here, the
state court on October 1, 2004, and December 3, 2004, ruled twice
that Plaintiffs properly served UFS.  As no transcript of the
state court proceedings was provided, it is impossible to
ascertain the basis for the state judge's rulings on service of

**20**

1  process.  The Defendant's error was made commencing in April of
2  2004, by a misanalysis of the totality of the circumstances
3  surrounding service of process on UFS's mail service agent in Las
4  Vegas and the California substantial compliance jurisprudence
5  that underlies service by out-of-state certified mail (C.C.P.
6  415.40), and the policy behind substituted service per C.C.P.
7  § 415.95 of a business organization, form unknown, that uses a
8  commercial mail service in dealing with the public.  Service of
9  process should not be a hide-and-seek contest.  Defendant's
10 managing trustee imprudently chose to ignore the lawsuit from
11 June until September 1, 2004, before consulting UFS's local
12 Washington lawyer, Mr. Claybaugh.

13      Here, Plaintiffs' counsel declared under penalty of perjury
14 that his normal hourly rate is $225.00.  He spent 5.95 hours
15 reviewing Defendant's removal documents and pleadings,
16 researching the law regarding removal and remand, drafting the
17 motion papers, and communicating with Defendant's counsel.  He
18 spent two additional hours traveling to and from the hearing, one
19 additional hour for the court hearing, and an extra 1.5 hours
20 preparing the Reply to Defendant's Objections to the Magistrate
21 Judge's Findings and Recommendations.  Plaintiffs claim a total
22 of 10.45 hours at $225.00 per hour, or $2351.25.  The tasks
23 performed, time spent, and Plaintiff's counsel's hourly rate are
24 reasonable and in conformity with prevailing rates for attorneys
25 practicing in the field of debtor-creditor law in the Eastern
26 District of California.  Based on UFS's misplaced original
27 efforts to shift the obligation of appearance and defense to the
28 Belize prior owner of UFS and its actual notice of and receipt by

**21**

mail by Mr. Cafferky of the summons and complaint, who then
mistakenly informed the Belize lawyer for the former owner, that
a lawsuit "might be filed in the future, fully knowing suit had
actually been commenced against UFS and service efforts were
underway.  The Magistrate Judge properly awarded Plaintiff
attorney's fees.  Defendant shall pay Plaintiffs' attorneys' fees
in the amount of $2,351.25.

**E.   Rule 11 Sanctions**

Plaintiffs seek an additional $5,000 in attorneys' fees as
Rule 11 sanctions.  Plaintiffs did not comply with the separate
motion requirement of Rule 11(c)(1)(A).  The service issues
raised by UFS are not frivolous based on C.C.P. §§ 415.40 and
415.95.  The Rule 11 sanctions request is **DENIED.**

**V.   CONCLUSION**

Analysis of the entire file shows that Plaintiffs properly
served UFS and that Defendant's removal was untimely.

IT IS ORDERED:

1.   The Findings and Recommendations of the Magistrate
     Judge are not clearly erroneous;

2.   Plaintiff's motion to remand the action to state court
     is **GRANTED,** and the action is **REMANDED** to the Superior
     Court of California, County of Merced;

3.   Plaintiffs' motion for attorney's fees and costs for
     improvident removal is **GRANTED.**  Plaintiffs shall
     recover from Defendant UFS $2,351.25 in attorneys'
     fees;

**22**

1        4.   Plaintiff's Motion for sanctions under Rule 11 is

2            **DENIED.**

3

4    **SO ORDERED.**

5

6    **DATED:  May 11, 2005.**

7                                **/s/ OLIVER W. WANGER**

8                                _____

9                                 **Oliver W. Wanger**
                            **UNITED STATES DISTRICT JUDGE**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28